## King, et al. v. Burkhart, et al.

(Decided December 17, 1915.)

### Appeal from Harlan Circuit Court.

1. Insane Persons—Conveyances by Infirm Person—Fraud or Undue Influence in Procurement of.—The law regards with suspicion transfers of property by persons mentally or physically infirm, procured to be made by those having custody of them.

2. Fraud—Undue Influence—Burden of Proof.—Though, ordinarily, the burden of proving fraud or undue influence is on the party alleging it, where either fraud or undue influence, from the fiduciary or confidential relation of the parties, is charged, the burden is on the persons against whom the complaint is made, to show the fairness of the transaction.

3. Deeds—Undue Influence—What Evidence Sufficient to Establish.—Where a father, seventy-eight years of age, who had for six months been confined to his bedroom by an incurable disease, nine days before his death from such disease, made deeds conveying his entire landed estate to certain of his children and excluding others; and the weight of the evidence conduced to prove that the deeds were procured to be written by his wife with the assistance of a son, a grantee in one of the deeds, and the father was, at the time the deeds were prepared and executed, in a stupor; held, that the judgment of the chancellor, dis-

missing the action brought by the excluded children of the grantor, to set aside the deeds, was unauthorized.

W. F. HALL for appellants.

G. G. ISAACS, H. C. CLAY and D. K. RAWLINGS for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This action was brought by the appellants, Mary King, her husband, Woodard P. King, Jane Cloud, her husband, Alexander Cloud, and Nancy Burkhart, against the appellees, Bradley Burkhart and McKinley Burkhart, infants over fourteen years of age, Lydia Burkhart and Moses Burkhart, seeking the cancellation of two deeds, executed by Jefferson Burkhart and his wife, Lydia Burkhart, to Bradley Burkhart and McKinley Burkhart, each conveying to them jointly a tract of land lying in Harlan county, of which Jefferson Burkhart had been owner and in possession for many years. The deed to the smaller tract excepted from the boundary thereof twenty acres of land, which the grantors at the same time conveyed by a third deed to the appellant Nancy Burkhart. The grantors at the same time executed a fourth deed, conveying to the appellee Moses Burkhart a small tract of land, disconnected from the tracts first mentioned. Jefferson Burkhart was twice married, the appellants Mary King, Jane Cloud and Nancy Burkhart and the appellee Moses Burkhart being his children by his first wife, and the appellees Bradley Burkhart and McKinley Burkhart, his children by the last wife, the appellee Lydia Burkhart. Jefferson Burkhart died in Harlan county, where he was domiciled, April 15, 1911, intestate and survived by his wife and children above named.

It was alleged in the petition that Jefferson Burkhart, at the time of making the several deeds mentioned, was seventy-eight years of age and an invalid, mentally incapable of transacting any business or of understandingly executing a deed, and that he was induced and coerced to make the deeds in question by the fraud and undue influence of the appellee Lydia Burkhart and other persons, then and theretofore practiced and exercised upon and over his mind and will. That the lands attempted to be disposed of by these deeds were all the decedent owned, and that the personal estate left by him was of insignificant value.

It was further alleged in the petition that the two tracts of land conveyed Bradley and McKinley Burkhart are worth $6,000.00; the tract conveyed Moses Burkhart $700.00, and the small parcel conveyed Nancy Burkhart, $100.00; that the deeds thus made by the decedent were ineffectual to pass the title to the lands therein described, and that the appellants Mary King, Jane Cloud and Nancy Burkhart were entitled to share therein with his other children. The prayer of the petition asked that the two deeds to Bradley and McKinley Burkhart be set aside and the lands described therein divided among the decedent's heirs-at-law, in the ratio of their respective interests.

After the infants Bradley and McKinley Burkhart were duly summoned, upon the filing of an affidavit showing them to be without a statutory or other guardian, curator or committee, a guardian *ad litem* was appointed by the court to defend for them, whose report appearing in the record shows the performance of that duty. The appellee Moses Burkhart, though duly summoned, failed to file an answer in the case, but the appellees Lydia Burkhart, Bradley Burkhart and McKinley Burkhart, by their joint and several answer, traversed the averments of the petition and, in addition, alleged that the appellants Mary King, Jane Cloud and Nancy Burkhart are entitled to no interest in the lands or other estate of their deceased father, Jefferson Burkhart; that in 1906, five years before the decedent's death, the appellants Mary King and Jane Cloud, in consideration of $100.00 given and paid to each of them by their father, the decedent, each executed and delivered to him a writing in which she acknowledged payment of the hundred dollars and its acceptance in full satisfaction of any and all interest or claim that she had in the father's estate; and that by virtue of these payments and the contemporaneous writings mentioned they and each of them are estopped to attack the deeds assailed by the petition or to make any further claim to an interest in the decedent's estate. That the appellant Nancy Burkhart, by the deed conveying her the twenty acres of land, executed by the decedent and his wife as stated in the petition, thereby received her full share of the decedent's estate. All affirmative matter in the answer was controverted by the joint and several reply filed by the appellants.

After the taking of much proof and submission of the case, the circuit court rendered judgment dismissing the petition at the appellants' cost, and from that judgment the latter have appealed.

As in all cases of this character, the evidence was furnished by the neighbors and relations of the litigants. These we find about equally divided numerically; some of them testifying that Jefferson Burkhart did not have sufficient mind to make the deeds, and others that he did. Some of the witnesses also testified as to acts and statements on the part of the decedent, indicating that the deeds to his sons Bradley and McKinley Burkhart were executed in pursuance of a purpose entertained by him for a year or more before his death; others as to similar acts and declarations from him, covering several years before his death, which indicated that it was his desire and purpose to have his estate go to and be equally distributed among all his children at his death. The depositions of two physicians were taken, both of whom had known the decedent many years and attended him during his last illness, though neither of them saw him on the day the deeds were executed. One of these physicians testified that at the time of making the deeds he possessed sufficient mind to comprehend the transactions and was competent to make the deeds. The other, with equal positiveness, testified he was not then competent to make the deeds, as he did not have sufficient mind to comprehend their meaning.

The evidence so far referred to, exclusive of that of the two physicians, being little else than mere expressions of opinion on the part of relations and friends of the deceased and his family, made up from casual meetings and interviews with him, throw little intelligent light on the question to be determined, but there are certain significant facts disclosed, yet to be mentioned, which, in our opinion, have a controlling influence in the decision of the case, and these facts, except in certain slight immaterial particulars, are substantially uncontroverted. They are, that for about two years before his death the decedent was afflicted with an incurable disease known as dropsy, and was thereby confined to his room or bed for as much as six months before he died. On the night before the execution of the deeds in question he had an attack which his family thought would cause his death before morning. Throughout the night he was fre-

quently and strongly dosed with whiskey by his wife, the appellee Lydia Burkhart, and on the following morning was discovered to be in such a stupor as to have to be aroused to get his attention, and upon being let alone would again lapse into the stupor. About midnight the wife sent a messenger for the decedent's son, Moses Burkhart, who returned with the messenger, reaching his father's home about two o'clock. Upon his arrival there he and the decedent's wife immediately began to confer together, and after such conference the latter sent her stepson, James Dean, to the house of Kelly, a notary public, with the request that he come at once to the decedent's home and write the deeds. Dean reported that he was unable to find Kelly. Thereupon, early the following morning he went, at the request of the decedent's wife, to see one James Turner, a deputy county court clerk, to secure his presence at the decedent's house for the purpose of writing the deeds. Turner came and immediately after his arrival wrote the deeds as directed by the decedent's wife and Moses Burkhart.

Shortly before Turner's arrival at the decedent's house the latter, while temporarily alone in a room of the house, fell from his bed or chair to the floor, where he was found by a member of the family. After the deeds were written by Turner they were read to or in the hearing of the decedent, who made his mark to them. According to all the evidence, the decedent made no request for the writing of these deeds and manifested no concern about them while they were being prepared by Turner, and the only directions received by Turner as to the manner in which the deeds should be written and to whom executed were given by the decedent's wife, Lydia Burkhart. It further appears from the evidence that the latter had theretofore and during the decedent's illness been more than once heard to strongly importune him to make the deeds to their sons Bradley and McKinley Burkhart, to which he seemed to refuse assent. The evidence also shows that she was very much younger than the decedent and was a woman of vigorous mind and dominating will, and that her ascendency over the will of the decedent during his illness was frequently exhibited.

The facts related as to what occurred at the time of writing the deeds and during the night previous, are shown by the testimony of several persons then present,

among them James Dean and Moses Burkhart, the latter of whom took an active part in procuring the execution of the deeds by his father.

It is patent from the foregoing facts that the circumstances attending the execution of the deeds were not only of a character to excite grave suspicion as to the good faith of the decedent's wife and son, but sufficient to remove all doubt as to the incapacity of the decedent to make the deeds.

In Miller v. Taylor, et al., 165 Ky., 463, we had before us a case involving the validity of a conveyance similar to that here attacked and we therein held that, while ordinarily, the burden of proving actual fraud is on the party alleging it, where fraud from the fiduciary or confidential relation of the parties is charged, the burden is on the person against whom the complaint is made to show the fairness of the transaction. As said in the opinion, quoting from McDowell v. Edwards, Adm'r., 156 Ky., 479:

" 'The law looks with suspicion upon the transfers of property by persons mentally or physically infirm to those having custody of them. Even when parties in good health stand in a confidential relation to each other, the burden is upon the stronger character who procures an advantage, to show that a transaction was fair; and relief will be afforded in equity in all such transactions in which influence has been acquired and abused, in which confidence has been reposed and betrayed. Allore v. Jewell, 94 U. S., 512. The relief stands upon the general principle applying to all the varieties of relations in which dominion may be exercised by one person over another. Smith v. Kay, 7 H. L. Cas., 750; Tate v. Williamson, L. R. 2 Ch., 61.' "

To the same effect are the following cases: McElwain v. Russell, 11 R., 649; Talbott v. Bedford, 21 R., 897; Koger v. Koger, 29 R., 235; Smith v. Snowden, 96 Ky., 32; Hoeb v. Maschinot, 140 Ky., 330; Hall v. Orme, 146 Ky., 467.

The facts here shown convince us that the deeds in question were procured to be executed by the fraud and undue influence of the wife of the decedent.

The appellants, Mary King and Jane Cloud, are not, as claimed by appellees, estopped to attack the deeds here involved by the payment of the $100.00 to each of them from the decedent. They had no legal right to sell, nor

the decedent to buy, a mere expectancy in his estate. They can, however, in any distribution of his estate, be charged with the $100.00 received by them, respectively, from the decedent, as an advancement.

We do not look upon the evidence of Moses Burkhart with the disfavor mainfested by appellees' counsel. If, as charged, he wrongfully assisted his stepmother in procuring the deeds in question, the deed he then obtained from his father can also be set aside, and it is to his credit that when required to testify he honestly admitted the wrong done his sisters.

For the reasons indicated the judgment is reversed and cause remanded, with directions to the trial court to set aside the deeds made by the decedent to Bradley and McKinley Burkhart.