## Williamson, et al. v. Lowe, et al.

(Decided November 3, 1916.)

### Appeal from Pike Circuit Court.

1. Deeds—Fraud—Undue Influence.—The law regards with suspicion deeds from a mentally or physically infirm person to those who have custody or control of him.

2. Fraud—Undue Influence—Burden of Proof.—Where fraud or undue influence is charged against one in procuring transfers of property by another to whom he sustains a fiduciary or confidential relation, the burden is on the one against whom the complaint is made, to show the fairness of the transaction.

3. Deeds—Mental Incapacity—Undue Influence—Evidence.—In an action by certain children to cancel deeds to three other children, alleged to have been procured from their father through fraud and undue influence, when he was mentally incapable of understanding the transactions, evidence held to show the mental incapacity of the father when the deeds were executed and that they resulted from undue influence exercised by the grantees.

4. Deeds—Fraud—When Heirs of Grantor Cannot Rely On.—Children of the grantor, his heirs at law, cannot attack a deed made by him to his wife, upon the ground that it was made to defraud his creditors, as he could not, himself, have succeeded in cancelling it upon that ground and their right is no greater than his.

STRATTAN & STEVENSON for appellants.

YORK & JOHNSON for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming in part and reversing in part.

This appeal is prosecuted from a judgment of the Pike circuit court, rendered in two actions on its equity docket that, following the completion of the issues in each, were consolidated, heard together and disposed of by the one judgment. Each of the actions was instituted by the appellants, some of whom are children, others grandchildren, and all of them heirs at law of O. M. B. Lowe, who died in Pike county, November 27th, 1911, intestate. One of these actions was brought against the appellees Tandy B. Lowe, J. M. Lowe and Alice Lowe Step, who are also children and heirs at law of O. M. B. Lowe, deceased, seeking to set aside three certain deeds, one to each of the appellees, executed by O. M. B. Lowe August 21, 1909, on the grounds that the grantor, at the time they were made, was mentally incapable of understanding the transactions and that their execution was procured by means of fraud and duress then practiced and exercised upon him by appellees.

The other action was against the appellee Elizabeth Lowe, widow of O. M. B. Lowe, and the appellees Tandy B. Lowe, J. M. Lowe and Alice Lowe Step, in which it was sought to set aside a deed conveying certain lands, made to Elizabeth Lowe by the decedent December 14, 1900; the grounds of attack upon this deed being that he was mentally incompetent to make it, that it was without consideration and only invested the grantee with the title as trustee to the lands conveyed for the benefit of the grantor who, as alleged, continued until his death to claim the lands as his own and together with his wife conveyed parts thereof to their children, the appellees Tandy B. Lowe, J. M. Lowe and Alice Lowe Step by the deeds made them August 21st, 1909.

The material allegations of the petition in each case were denied by the answers filed thereto. By the judgment appealed from the petition in each of the consolidated actions was dismissed and appellees awarded their costs.

The evidence appearing in the record is voluminous and conflicting, that of appellants conducing to prove that at the time of the execution by the decedent, August 21, 1909, of the three deeds to the appellees Tandy B. Lowe, J. M. Lowe and Alice Lowe Step, respectively, he was, if not of unsound mind, so weak of body and mind as to render him incapable of understanding the meaning of the deeds or the character or value of the

lands conveyed; that in 1904 or 1905 O. M. B. Lowe had a stroke of paralysis which for a time confined him to his bed, and from the effects of which he did not thereafter recover; that the stroke made of him a cripple and so impaired his mental faculties as to greatly weaken his mind and will-power; that he was thereafter and until the time of his death subject to aberrations or delusions of mind and would at times imagine that he was under arrest and cry out, "Don't tie me, I will give up;" that he would frequently imagine himself at some place other than his home and once was seen to attempt to go through a fence on his premises at a place where there was no gate; and that his son, the appellee Tandy B. Lowe, at such times had to walk him about the premises, point out the graveyard to him, a familiar walnut tree, and show him the house, to convince him that it was his house and make him satisfied to accept and enter it as his home. On one occasion, when visited by his daughter, the appellant Octavia Williamson, about the time of the execution of the deeds, he insisted that she was Mrs. Harris, his oldest daughter. At various times he would fail to recognize his oldest neighbors and friends when they would call to see him and had to be told by his wife who they were. He would also at times claim that the appellee Elizabeth Lowe was not his wife or the mother of his children and that someone was taking his stock or worrying it. On another occasion he was seen trying to put his handkerchief in his horse's mouth and claimed that in so doing he was bridling the animal. The delusions of mind referred to began with the paralytic attack suffered by the decedent and many of them manifested themselves about the time the deeds to the appellees were made and during the month of their execution. Appellants' evidence also tended to prove that previous to the paralytic attack he seemed to manifest the usual parental affection for the appellants and to be interested in their welfare. Indeed he gave to each of them when they married and wished to establish homes of their own, small tracts of land and in some instances, if preferred, money; but, without apparent cause, after the illness resulting in his paralysis he seemed to have lost all affection for them and, in fact, assumed towards them an attitude of positive hostility, which continued until his death and was so pronounced that their visits to his home were rendered embarrassing by his indif-

ference. It also appears from appellants' evidence that the three appellees to whom the deeds in question were made lived with or near their father, O. M. B. Lowe, and that Tandy B. Lowe was his favorite among all his children; that the latter lived with his father prior to and when the deeds in question were executed and until his death, was entrusted with his money and the management of his estate and had the use of the money without being required by his father to account therefor.

Down to the time of the paralytic attack the life of O. M. B. Lowe, according to the evidence, had been one of unusual activity. The fact that he reared and provided for the eleven children born to himself and wife and, in addition, accumulated a very considerable estate, consisting mainly of lands, convincingly shows that he was prior to the paralytic attack at least possessed of a fairly good mind, excellent judgment and strong will-power; and also that he was both frugal and industrious. Several years before his illness and death he became involved in litigation with the heirs of one Goff over a large tract or several tracts of land, of which he and they both claimed to be the owners. The litigation extended over several years in the Pike circuit court and in the Court of Appeals, and though the action was won and the lands in controversy recovered by him in the end, it was not decided until shortly before his death. This protracted litigation put him to great expense, gave him much worry and doubtless helped to cause the paralytic attack and subsequent illness which resulted in his death. As he was more than seventy years of age when attacked by the illness referred to, the conclusion would not be unwarranted, even in the absence of testimony from medical experts, that the subsequent enfeebled condition of his mind was superinduced by the paralytic stroke of which he was the victim.

In addition to the evidence already mentioned, which was furnished in part by the appellants and in part by the neighbors and friends of O. M. B. Lowe, who have no interest in the property here in controversy, the circumstances attending the execution of the deeds must also be considered. None of the appellants was present when the deeds to the appellees Tandy B. Lowe, J. M. Lowe and Alice Lowe Step were executed, or advised of their intended execution, but the latter were all present, and they alone were closely associated with their father

at that time and for several years previously. Tandy
B. Lowe, the youngest of the children and favorite of
his father, had for several years been his constant com-
panion and attended to his wants. According to the evi-
dence, Tandy called from Pikeville an attorney, Roscoe
Vanover, to write the deeds, and the latter traveled a
distance of one hundred and twenty-five miles to reach
the home of O. M. B. Lowe. He was met at the railroad
station by Tandy and by him driven to the Lowe home,
at which they arrived Friday evening, August 20th.
While driving from the station to the Lowe home Tandy
explained to Mr. Vanover why he had been summoned
to his father's and the nature of the service that would
be required of him. After his arrival at the residence of
O. M. B. Lowe, Mr. Vanover conversed with the latter
down to the time of retiring, but without bringing up
the subject of the deeds that were to be written by him;
the most of the evening being spent in a discussion of
the Goff-Lowe suit, which had not then been finally de-
cided. On Saturday morning, however, the deeds were
prepared by Mr. Vanover and that to the appellee Tandy
B. Lowe was signed by O. M. B. Lowe, the grantor, but
in such poor form that the signature was practically un-
intelligible. The signature of the grantor to the deed to
J. M. Lowe and that to Alice Lowe Step was attached by
his making his mark, duly attested.

George M. Step, a deputy of the clerk of the Pike
county court, who was called in by Tandy B. Lowe for
that purpose, took the acknowledgments of the grantor
and his wife to each of the three deeds. According to
Step's testimony, O. M. Lowe was lying on the bed when
he got there, where he remained during the greater part
of the time Step was in the house. He sat up, however,
long enough to sign his name to the deed to Tandy B.
Lowe and make his mark to each of the other two deeds.
When asked why O. M. B. Lowe had written his name
to one of the deeds and signed the others by making his
mark, Step testified that after so poorly writing his name
to the deed to Tandy he was too weak and nervous to
attempt to write it to the other two deeds, hence his mark
was made to each of them. Step also testified that all
of the three deeds were typewritten instruments, but they
were not prepared in his presence nor did he know by
whom they were prepared; that the three deeds em-
braced all the lands of which O. M. B. Lowe was the

owner; and that after the deeds had been acknowledged, O. M. B. Lowe claimed that the one to his daughter, Alice, had not been signed by him, but was later convinced that it had; that after the execution of the deeds and his work of certifying the acknowledgments thereto had been completed, O. M. B. Lowe tried to sell him a part of the land embraced in the deeds or one of them. Step further testified that in his opinion, based upon the condition of O. M. B. Lowe at the time and what he then said and did, he did not have sufficient mind to understand the meaning of the deeds or the character or value of the lands they conveyed.

The evidence for appellees, furnished by themselves and other witnesses, was all to the effect that O. M. B. Lowe was a man of strong mind and will-power who at no time permitted any interference with his business or plans. They admitted, without exception, that one side of his body was paralyzed in 1905 and that his physical health and strength were greatly impaired thereby, but expressed the opinion that it did not seriously impair his mental faculties and that at the time of the execution of the deeds to the appellees, Tandy B. Lowe, J. M. Lowe and Alice Lowe Step, he had sufficient mind to comprehend the transactions and, in fact, dictated to Vanover, the draftsman of the deeds, the boundaries of the several tracts of land described therein. Other witnesses for appellees testified that in 1907, two years after he suffered the paralytic attack, he attended court at Pikeville to be at the trial of his case against the Goffs, travelled six miles horseback, the remainder of the long distance by rail, and after his arrival in Pikeville went upon the witness stand on the trial of his case and testified with great force and clearness. This, however, was two years before the execution of the three deeds to his children.

Blackburn, a witness for appellees, testified that in April, 1911, seven months before O. M. B. Lowe's death, he as deputy clerk took his acknowledgment as one of the grantors to a deed conveying timber to one McCall and that he then had greater mental ability than he (Blackburn). O. M. B. Lowe's capacity to execute the three deeds to his children at the time of their execution was also testified to by the appellee Elizabeth Lowe, his widow. Mr. Vanover also gave it as his opinion that O. M. B. Lowe was then competent to execute the deeds,

but admitted his illness and inability to write his name to the two of them to which he made his mark. He also testified that he had no conversation with O. M. B. Lowe Friday night, August 20th, about the deeds and did not discuss them with him until Saturday, the 21st; that during his stay at Lowe's the latter when not in a conversation with him or others would talk or mutter to himself in an inaudible tone, but that he (Vanover) had known him to talk in that manner before. In explanation of Vanover's being called from so distant a point as Pikeville to write the deeds, the appellee Tandy B. Lowe testified it was because Mr. Vanover's services as his father's attorney in his tedious and difficult litigation with the Goffs had given him great confidence in his skill and integrity.

While the witnesses testifying in behalf of appellees were positive in their belief of O. M. B. Lowe's competency of mind after the paralytic attack and down to the time of his death, they failed to specifically contradict the positive testimony of appellants and their witnesses as to his acts and conduct manifesting the peculiar delusions of mind to which he was subject in the later years of his life and, especially, about the time of the execution of the three deeds to his children in question. Nor does any of appellees' evidence tend to refute that of appellants as to the hostility of O. M. B. Lowe toward the appellants and his partiality for his son, the appellee Tandy B. Lowe, or the latter's great influence over him. It is true that the evidence discloses few if any overt acts upon the part of Tandy showing the exercise of such influence, but it is shown by the unusual affection which the father at all times manifested for him, his praise of him to others, the fact that Tandy was entrusted for many years before his death with the control of his business, money and other property, and his activity in procuring the execution of the deeds. In brief, it is our opinion that, considered as a whole, the weight of the evidence fairly leads to the conclusion that at the time of the execution of the three deeds to his children, O. M. B. Lowe was mentally incompetent to know what he was doing or to understandingly dispose of his property, and that in executing the deeds he was unduly influenced by his son Tandy, whose constant attendance upon him and control of his person and property afford-

ed him every opportunity to bring about the accomplishment of his purposes.

While it is true that the deed to the appellee Tandy B. Lowe contains a provision requiring him to support his father and mother for the remainder of their lives and to pay his sister, Octavia Williamson, $400.00, the evidence shows that the father had abundant means for the support of himself and wife, consisting of money, a considerable amount of which was owned by him at the time of his death, and that the son did not in fact provide for his or his wife's support after the execution of the deeds, as there was no necessity for his doing so. The $400.00 has not been paid by Tandy B. Lowe to his sister, Octavia Williamson, and if the deeds are set aside will not have to be paid by him. On the other hand, while the evidence shows that the appellants, prior to the execution of the deeds in question, received advancements of money or property from their father, in no instance did the amount given to either of them, whether in lands or money, amount to more than a thousand or fifteen hundred dollars, whereas, by the deed of August 21, 1909, to Tandy B. Lowe, there was attempted to be conveyed him about 1,200 acres of land, worth from $50,000.00 to $75,000.00, by the deed to J. M. Lowe, 366 acres of land of the value of $12,000 or $15,000, and by the deed to Alice Lowe Step an equal quantity of land of like value. The inequality in the gifts thus made by O. M. B. Lowe to his children is a strong circumstance tending to show his hostile feeling toward the appellants, previously referred to in the opinion as being disclosed by other evidence appearing in the record.

In our opinion the facts here presented bring the conveyances to the appellees Tandy B. Lowe, J. M. Lowe and Alice Lowe Step from their father clearly within the rule announced in King, etc. v. Burkhart, 167 Ky. 424; Miller v. Taylor, etc., 165 Ky. 463, and other cases in each of them cited, viz.:

"The law looks with suspicion upon the transfers of property by persons mentally or physically infirm to those having custody of them. Even when parties in good health stand in a confidential relation to each other, the burden is upon the stronger character who procures an advantage, to show that a transaction was fair; and relief will be afforded in equity in all such transactions in which influence has been acquired and abused, in which

confidence has been reposed and betrayed. Allore v. Jewell, 94 U. S. 512. The relief stands upon the general principle applying to all the varieties of relations in which dominion may be exercised by one person over another. Smith v. Kay, 7 H. L. Cas. 750; Tate v. Williamson, L. R. 2 Ch. 61.''

The appellees named have failed in this case to relieve themselves of the burden imposed by the rule, *supra.* The appellants' attack upon the deed made to their mother by their father cannot, however, be sustained. That deed was made in 1900, five years before the grantor became paralyzed and eleven years before his death; and there is not a scintilla of evidence in the record that he was then physically or mentally incompetent to make the conveyance. The contention that the grantor was then threatened with debt and for that reason made the conveyance to defraud his creditors, and that it merely created a trust of which he alone was the intended beneficiary, was not sustained by the evidence. But if these things were true, appellants, as the heirs at law of the grantor, could not complain of them. As he could not have succeeded in setting aside the deed to his wife had such an attempt been made before his death, appellants can have no greater right to do so than could have been exercised by him. The claim of appellees that the gifts of money or property that were received by appellants from their father many years before his death were made by him and accepted by them with the understanding that they were in full of all they would be entitled to receive from his estate, if true, cannot be considered in determining whether the deeds here attacked should be set aside. Those are matters that cannot be determined until the father's estate is distributed.

For the reasons indicated, the judgment is affirmed insofar as it dismissed the petition in the action brought to set aside the deed from O. M. B. Lowe to his wife, Elizabeth Lowe; but to the extent that it dismissed the petition in the action to set aside the three deeds from O. M. B. Lowe to Tandy B. Lowe, J. M. Lowe and Alice Lowe Step, it is reversed and the cause remanded with directions to the circuit court to enter a judgment cancelling and setting aside the three deeds last mentioned and for further proceedings consistent with the opinion.